**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **RENE ANTONIO GOMEZ RAMIREZ,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1974-D** |
| | ) | |
| **U.S. DEPARTMENT OF HOMELAND SECURITY (DHS), et al.,** | ) | |
| | ) | |
| | ) | |
| **Respondents.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner Rene Antonio Gomez Ramirez, a noncitizen[1] and Salvadoran national proceeding pro se, filed a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under 28 U.S.C. § 2241 his detention by U.S. Immigration and Customs Enforcement ("ICE"). United States District Judge Charles B. Goodwin referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Doc. 4. The undersigned set an expedited briefing schedule. Doc. 5. Respondents filed a Motion to Dismiss, Doc. 7, and Petitioner filed a response, Doc. 9. The undersigned construed the Motion to Dismiss as a Response to the Petition, *see* Doc. 8, and both the Motion and the Petition are at issue. For the reasons below, the undersigned recommends the Court grant the Motion to Dismiss and dismiss the Petition to the extent Petitioner seeks

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

a bond hearing, and otherwise deny the Petition to the extent Petitioner seeks release other than through a bond hearing.

## I. **Background**

Petitioner, a citizen of El Salvador, entered the United States without inspection at an unknown location on an unknown date. Doc. 7-1 at 1 (Notice to Appear). He alleges he was taken into ICE custody on April 15, 2026. Pet. at 4. The same day, ICE placed Petitioner into removal proceedings before the Immigration Court under 8 U.S.C. § 1229a through the issuance of a Notice to Appear, and charged him with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection. Doc. 7-1 at 1.

On June 22, 2026, an Immigration Judge ("IJ") granted Petitioner's request to voluntarily depart the United States. Doc. 7-2 at 1-2 (IJ Order). He was granted pre-conclusion voluntary departure, in lieu of removal, to depart on or before July 13, 2026. *Id*. at 1. The IJ ordered Petitioner's voluntary departure "[u]nder safeguards," meaning he remained in ICE custody. *Id*. The IJ ordered that if Petitioner "fail[ed] to depart as required" by July 13, 2026, the grant of pre-conclusion voluntary departure would be withdrawn without further notice and an alternative order of removal to El Salvador "shall become immediately effective." *Id*. Petitioner waived his right to appeal the IJ's order. *Id*. at 3.

Petitioner remained in ICE custody and did not depart by July 13, 2026. On August 12, 2026, he filed an appeal with the Board of Immigration Appeals ("BIA"). Doc. 7-3 at 1 (indicating BIA's receipt of Petitioner's appeal on August 12, 2026); *see also*

EOIR, Automated Case Information, *at* https://acis.eoir.justice.gov/en/ (last accessed Nov. 5, 2026) (same).

When Petitioner filed his Petition, he was detained at Diamondback Correctional Facility in Watonga, Oklahoma. Pet. at 1. He remains detained there. *See* ICE Online Detainee Locator System, *at* https://locator.ice.gov/odls/#/results (last accessed Nov. 5, 2026).

## II. <u>Petitioner's Claims and Respondents' Motion to Dismiss</u>

Petitioner asserts four counts in his Petition.

- **Count I: Violation of Rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments**. Petitioner alleges his "prolonged and potentially indefinite mandatory detention" violates due process, freedom from search and seizure, right to a fair trial, right to counsel, and double jeopardy. Pet. at 6. He also alleges a "systemic pattern of bond denials by [Department of Homeland Security ("DHS")] and immigration judges" under 8 U.S.C. § 1225. *Id.*

- **Count II: Violation of the Immigration and Nationality Act ("INA") and Due Process.** Petitioner alleges his detention violates due process and 8 U.S.C. §§ 1225, 1226, and 1299a of the INA. Pet. at 6. He also alleges more broadly an "improper influence over immigration proceedings" by DHS, "repeated transfers of detainees," and "lack of timely and meaningful custody reviews." *Id.*

- **Count III: Violation of International Human Rights Standards.** Without specific allegations related to Petitioner, he generally asserts ICE has violated "international human rights standards" and "executive branch actions and statements by ICE have contributed to discriminatory practices and inhumane detention conditions." *Id.*

- **Count IV: Violation of Constitutional Principles of Separation of Powers.** Without specific allegations as to Petitioner, he broadly alleges the Executive Branch "has exceeded its authority," "resulting in improper executive influence over immigration adjudications and undermining the integrity of the judicial system." *Id.* at 7.

Petitioner seeks release, "protection from further ICE immigration-related arrests," and injunctive relief. *Id.* at 7.

Respondents timely filed a Motion to Dismiss. Doc. 7. They contend "Petitioner's removal proceedings are administratively final" based on the IJ's order on voluntary departure, and "he is not entitled to a bond hearing." *Id.* at 2. Petitioner responded to the Motion to Dismiss and acknowledges that he filed an "untimely appeal" to the BIA. Doc. 9 at 4. He claims he is entitled to a bond hearing under 8 U.S.C. § 1226(a) "[i]f the BIA accepts the late appeal and restores a pending administrative proceeding." Doc. 9 at 4. Petitioner also asserts that "[i]f instead the alternate removal order became administratively final, Respondents must identify the finality date and justify detention under 8 U.S.C. § 1231(a), including applicable removal-period calculation and required custody reviews." Doc. 9 at 4-5.

## III. <u>Standard of Review</u>

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV. <u>Applicable INA Framework</u>

The two INA sections that govern detention of noncitizens before entry of a removal order are 8 U.S.C. §§ 1225 and 1226. If a noncitizen is detained under § 1225(b)(2)(A), he is not entitled to a bond hearing. On the other hand, § 1226(a) more generally authorizes

detention of a noncitizen pending removal proceedings and entitles the noncitizen to a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1))).

The detention for a petitioner with a final order of removal is instead governed by 8 U.S.C. § 1231(a). Under that statute, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." *Id.* § 1231(a)(1)(A); *see Carbajal v. Holder*, 43 F. Supp. 3d 1184, 1188 (D. Colo. 2014) ("After the pre-removal period concludes, the statutory authority to detain an alien shifts to 8 U.S.C. § 1231."). This shift from the pre-removal period of § 1225 and § 1226 to the "removal period" under § 1231 is triggered by the latest of three events:

> (i) The date the order of removal becomes administratively final;
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order;
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B)(i)-(iii). During the 90-day removal period, the noncitizen is subject to mandatory detention. *Id.* § 1231(a)(1)(A), (a)(2)(A).

Removal of a noncitizen is not always completed during the removal period. And the end of the removal period does not automatically trigger release. *See* 8 U.S.C. § 1231(a)(6) (allowing post-removal-period detention of, among others, noncitizens who are "inadmissible under section 1182" or "removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4)"); *Morales-Fernandez v. INS*, 418 F.3d 1116, 1123 (10th Cir. 2005). The detention of a noncitizen subject to a final order of removal may not be

indefinite and is presumptively reasonable for only six months beyond the removal period. *Zadvydas*, 533 U.S. at 701. "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Ordinarily, "if the alien does not leave or is not removed within the removal period," he may be released "subject to supervision." 8 U.S.C. § 1231(a)(3) (citation modified).

To obtain habeas relief under *Zadvydas*, a petitioner has the initial burden (1) to show his post-removal-order detention has surpassed six months or to rebut the presumption of reasonableness if such detention is less than six months, and (2) to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. If the petitioner meets his initial burden, "the Government must respond with evidence sufficient to rebut that showing." *Id.*

## V. Analysis

### A. Petitioner is now under mandatory detention, with a final order of removal, and not entitled to a bond hearing under § 1226(a).

Respondents acknowledge that 8 U.S.C. § 1226(a) governed Petitioner's detention before entry of a removal order. Resp. at 1. However, an IJ granted Petitioner's request on June 22, 2026, to voluntarily depart the United States. Doc. 7-2 at 1-2 (IJ Order). He was given until July 13, 2026, to depart, and an alternate order of removal to El Salvador would "become effective immediately" if he did not depart by that date. *Id.* at 1. Petitioner's voluntary departure was "[u]nder safeguards" and he remained in ICE custody.

*Id.* Petitioner failed to depart by July 13, 2026. As a result, an alternative order of removal to El Salvador became immediately effective. He also waived his right to appeal the IJ's order. *Id.* at 3.

Later, on August 12, 2026, Petitioner appealed the IJ's order to the BIA. Doc. 7 at 2-3; Doc. 9 at 2-4. He recognizes his administrative appeal was "untimely" and "does not automatically stay removal." Doc. 9 at 4-5. But Petitioner claims his BIA filing is "legally sufficient" because the BIA "may accept an otherwise untimely appeal when equitable tolling is established through diligence and an extraordinary circumstance." *Id.* at 4-5.

The undersigned is not persuaded. Petitioner's order of removal became administratively final on July 13, 2026, when the alternate order of removal became immediately effective. *See* 8 C.F.R. § 1240.26(d) (noting that "[u]pon granting a request made for voluntary departure either prior to the completion of proceedings or at the conclusion of proceedings, the [IJ] shall also enter an alternate order or removal"). A removal order typically becomes final "upon the earlier of" (i) a determination by the [BIA] affirming such order; or (ii) "the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B). Here, the IJ ordered Petitioner's voluntary departure by July 13, 2026. Doc. 7-2 at 1. When Petitioner failed to depart, the IJ entered an alternative order of removal that took effect immediately on July 13, 2026, because he had waived his appeal. *See* Doc. 7-2 at 1, 3; 8 C.F.R. § 1003.39 (noting an IJ's decision may "become [] final upon waiver or appeal"); *see also Lopez v. Mullin*, No. 26-cv-663, 2026 WL 1602614, at *2 (D.N.M. June 4, 2026) (addressing finality of an alternate order in analogous circumstances

when petitioner did not timely depart). Further, no evidence in the record indicates the BIA has stayed or otherwise modified Petitioner's order of removal based on his untimely appeal in August.

Accordingly, on July 13, 2026, Petitioner's entitlement to a pre-removal bond hearing under § 1226(a) ended when he shifted to the "removal period" under § 1231. His request for release on bond should therefore be dismissed as moot. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) ("If an intervening circumstance deprives the [petitioner] of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot.") (citation modified). Here, release on bond after a § 1226(a) hearing is no longer available to Petitioner because he has moved from the pre-removal period to mandatory detention under § 1231.[2] *See, e.g.*, *Lopez Macias v. Mullin*, No. CIV-26-484-J, 2026 WL 2455801, at *2 (W.D. Okla. Aug. 13, 2026) (R&R) (recommending dismissal of petition as moot when IJ granted voluntary departure, order became administratively final, and petitioner was then subject to mandatory detention under § 1231(a)), *adopted*, 2026 WL 2473668 (W.D. Okla. Aug. 21, 2026).

As a result, that portion of his habeas challenge requesting release through a bond hearing is moot. *See Carbajal*, 43 F. Supp. 3d at 1189 (finding a bond hearing request moot under similar circumstances); *see generally Knox v. Serv. Emps. Int'l Union, Loc.*

---

[2] None of the mootness exceptions apply to Petitioner's request for a bond hearing. *Ind v. Colo. Dep't of Corr.* 801 F.3d 1209, 1213 (10th Cir. 2015) (listing four exceptions to mootness).

*1000*, 567 U.S. 298, 307 (2012) ("A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.") (citation modified). The Court should grant Respondents' Motion to Dismiss and dismiss as moot Petitioner's request for release through a bond hearing. *See Quintanilla v. Figueroa*, No. CIV-26-797-G, 2026 WL 2302459, at *1 (W.D. Okla. Aug. 10, 2026) (dismissing a habeas petitioner's claims as moot because the petitioner was subject to mandatory detention under § 1231).

**B. Petitioner is not otherwise entitled to release based on *Zadvydas*.**

Petitioner generally seeks release from ICE custody. In some circumstances, a Court can order release once a noncitizen's 90-day removal period has ended if the noncitizen has not been removed. *Zadvydas*, 533 U.S.at 687-88.

> There is no express limitation on the length of an alien's post-removal-period [of] detention under § 1231(a)(6). But in *Zadvydas*, the Supreme Court interpreted § 1231(a)(6) narrowly and imposed an implicit reasonable time limitation on such detention to avoid any Fifth Amendment due process issues that could arise from indefinite detention. After *Zadvydas*, an alien can be detained only until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Babakhani v. Gantt*, No. CIV-26-705-SLP, 2026 WL 1822995, at *3 (W.D. Okla. June 24, 2026) (citation modified). If Petitioner's order of removal became administratively final on July 13, 2026, his 90-day removal period under § 1231(a) ended on October 11, 2026.

Petitioner, though, fails to include allegations in the Petition utilizing the *Zadvydas* framework and addressing likelihood of removal in the reasonably foreseeable future. Nor has there been a request to submit an amended petition. He even acknowledges "a conventional *Zadvydas* claim may be premature depending in the actual finality date and any administrative or judicial stay." Doc. 9 at 5. To the extent Petitioner asserts facts

specific to his detention, his allegations focus on the pre-removal period that has ended. *See* Pet. at 6-7 (alleging violations of due process under §§ 1225 and 1226). The undersigned recommends the Court decline to construe the Petition as requesting release under *Zadvydas*, though Petitioner may request such relief in a future action if circumstances entitle him to such relief at that time.

Even if the Court liberally construed the Petition to raise a claim under *Zadvydas*, Petitioner's detention has not extended beyond the presumptively reasonable six-month period. He also fails to meet the *Zadvydas* requirement to establish "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. Petitioner has not alleged any institutional barriers to his removal; nor has he shown any obstacles particular to his circumstances that would prevent or delay his removal. *See, e.g.*, *Abiodun v. Mukasey*, 264 F. App'x 726, 729 (10th Cir. 2008) (finding a petitioner was not entitled to relief because there had been "no showing" he would "not be accepted by his homeland of Nigeria"). Accordingly, to the extent the Petition could be construed to seek release under *Zadvydas*, Petitioner fails to show there is no significant likelihood of his removal in the reasonably foreseeable future.

**C. Petitioner's remaining claims do not warrant relief.**

Petitioner also alleges "ICE violated the 4th, 5th, 6th, 8th, and 14th Amendments relating to (1) due process; (2) freedom from search, seizure, or self-incrimination; (3) statutory rights to be free, to have a full and fair trial[,] the right to legal assistance, and the right not to be prosecuted twice for the same act/crime." Pet. at 6. Petitioner's due-process challenge was premised on Respondents' application of § 1225(b)(2)(A) to govern his pre-

removal-order detention. Pet. at 6. Petitioner, though, is now subject to a final order of removal, so his due process claim challenging pre-removal-order detention is moot. To the extent Petitioner attempts to raise other constitutional violations, he does not adequately develop those arguments. Finally, Petitioner lodges sweeping claims against ICE and the Executive Branch of systemic irregularities, violations, and misuses of authority in immigration enforcement. *See generally id.* at 6-7. Such generalized assertions fail to state a specific claim upon which relief to Petitioner can be granted, so the Court need not separately address them.

## VI. Recommendation and Notice of Right to Object

For the foregoing reasons, the undersigned recommends that the Court (i) **GRANT** Respondents' Motion to Dismiss, Doc. 7, and **DISMISS as moot** the Petition to the extent Petitioner seeks a bond hearing and (ii) **DENY** the Petition to the extent Petitioner seeks release via means other than a bond hearing. The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **November 19, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **November 30, 2026**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 5th day of November, 2026.

______________________________
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE